IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02521-STV

JEFFREY HELVIE,

    Plaintiff,

v.

CHAD JENKINS,

    Defendant.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

    This matter is before the Court on Defendant's Motion for Summary Judgment (the "Motion"). [#32] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##11, 13] The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **GRANTED**.

**I.   Background**

    This case arises out of a 2018 encounter between Plaintiff and Adams County Sheriff's Deputy Chad Jenkins. [*See generally* #1] The undisputed facts are as follows.[1]

---

[1] The undisputed facts are drawn from the Separate Statement of Facts filed with Defendant's reply in support of the Motion. [#38-1] The Court refers to the sequentially

On August 23, 2018, at approximately 11:45 p.m., Deputy Jenkins observed Plaintiff make several traffic infractions while driving a Nissan pickup truck. [#38-1, SOF1-2]  Specifically, Deputy Jenkins observed Plaintiff turn without using a signal; accelerate, slow down and then accelerate to speeds between 52 and 74 miles per hour; and stop almost a truck's length past the limit line for a stop sign. [*Id.* at SOF3]  Deputy Jenkins activated his overhead lights, and Plaintiff pulled over his vehicle. [*Id.* at SOF4]  Besides Plaintiff, two female passengers and a large black dog were inside the Nissan truck. [*Id.* at SOF7]

According to Plaintiff, his window was partially down when Deputy Jenkins approached Plaintiff's vehicle. [*Id.* at SOF5]  According to Deputy Jenkins, he could smell the strong odor of burnt marijuana coming out the window, though Plaintiff disputes having smoked marijuana that day. [*Id.* at SOF6]  Plaintiff handed his driver's license and registration to Deputy Jenkins. [*Id.* at SOF10]  Plaintiff had some difficulty providing his proof of insurance—which was on his phone—due to either poor cellular reception or Plaintiff's inability to correctly enter a passcode. [*Id.* at SOF11]

Deputy Jenkins noticed what appeared to be ash on Plaintiff's lap.[2] [*Id.* at SOF13]  According to Plaintiff, Deputy Jenkins asked Plaintiff about the "white powder" in Plaintiff's

---

numbered facts set forth in the Statement of Facts as "SOF#."  The Court periodically cites directly to the exhibits cited by the parties in the Statement of Facts to provide additional context.  Although Plaintiff asserts that "all material facts are disputed" [#35 at 4], this Court largely disagrees.  Disputed facts are identified as such throughout this Order.

[2] Deputy Jenkins also maintains that he observed two marijuana bottles on the driver's side floorboard. [*Id.* at SOF12]  Plaintiff has submitted an affidavit in which he claims that the marijuana bottles were under his car seat and thus not readily visible from outside the car. [*Id.*; *see also* 35-2, ¶ 13]  The Court will therefore treat Deputy Jenkins' observation of the marijuana bottles as a disputed fact and will not consider this fact for purposes of deciding the instant Motion.

lap and asked Plaintiff whether he had been drinking or smoking. [*Id.* at SOF13-14] Plaintiff maintains that he stated he did not need to answer Deputy Jenkins' questions. [*Id.* at 14] It is undisputed that Plaintiff then rolled up his window, which Plaintiff says he did because he was scared. [*Id.* at SOF5, 14]

At this point, Deputy Jenkins opened the door of Plaintiff's vehicle. [*Id.* at SOF17] According to Deputy Jenkins, he believed that Plaintiff was operating a vehicle while under the influence and wanted to conduct further investigation. [*Id.* at SOF15-16] Deputy Jenkins asked Plaintiff to get out of the vehicle several times, but Plaintiff refused to comply. [*Id.* at SOF18] According to Plaintiff, he did not get out of the vehicle because he observed Deputy Jenkins standing as if he had a gun or a taser, and Plaintiff was terrified. [*Id.*]

When Plaintiff did not get out of the vehicle, Deputy Jenkins grabbed Plaintiff's left arm and ordered him out of the vehicle. [*Id.* at SOF19] According to Deputy Jenkins, Plaintiff pulled away. [*Id.*] Deputy Jenkins then grabbed Plaintiff's leg and pulled him out of the vehicle, causing Plaintiff to land on his back. [*Id.* at SOF20] As Deputy Jenkins was pulling Plaintiff out of the vehicle, he observed a handgun in the pocket of the driver's side door.[3] [*Id.* at SOF21] Deputy Jenkins then dragged Plaintiff to the back of Plaintiff's

---

[3] In an affidavit, Plaintiff states that Deputy Jenkins "must" have seen the firearm when he searched the truck after having already subdued Plaintiff. [#35-2, ¶ 13] But, unlike with the marijuana bottles, Plaintiff does not dispute Deputy Jenkins' statement that the handgun was in the pocket of the driver's side door, and thus could have been visible to Deputy Jenkins as he was pulling Plaintiff out of the vehicle. [*Id.*] And Plaintiff does not offer any evidence to contradict the statement in Deputy Jenkins' police report that he observed the firearm as he was pulling Plaintiff out of the vehicle. [#32-2 at ¶¶ 6-7, 13] Thus, Plaintiff's conclusory and self-serving affidavit, which provides nothing more than a guess as to when Deputy Jenkins observed the firearm, does not create a genuine issue of material fact as to when Deputy Jenkins observed the firearm. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (To create a genuine issue of material fact, "the

3

vehicle, which Deputy Jenkins stated he needed to do in order to remove Plaintiff from close proximity to the gun. [*Id.* at SOF23] According to Plaintiff, Deputy Jenkins then dropped a knee into Plaintiff's chest, fracturing two of Plaintiff's ribs. [#35-2, ¶ 10]

Eventually, Deputy Jenkins was able to handcuff Plaintiff and place Plaintiff in the patrol car. [#38-1, SOF25] Deputy Jenkins did not use any force on Plaintiff after he was fully restrained. [*Id.* at SOF26] Deputy Jenkins searched Plaintiff's vehicle and found a loaded .45 caliber handgun, unsealed bottles of marijuana, and a glass pipe that had marijuana residue. [*Id.* at SOF28] Plaintiff requested medical attention and Deputy Jenkins called for an ambulance. [*Id.* at SOF29] Plaintiff was taken to the hospital where he was treated and then medically cleared for transport to the Adams County Detention Facility. [*Id.* at SOF30]

On August 21, 2020, Plaintiff initiated this lawsuit. [#1] The Complaint brings a single excessive force claim pursuant to 42 U.S.C. § 1983. [*Id.*] On November 5, 2021, Deputy Jenkins filed the instant Motion seeking summary judgment on Plaintiff's claim. [#32] Plaintiff has responded to the Motion [#35], and Deputy Jenkins has replied [#38].

## II.   LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). If the moving party bears the burden of proof at trial, "the moving party must establish, as a matter of

---

nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.").

law, all essential elements of the [claim or defense upon which summary judgment is sought] before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). In other words, the moving party "must support its motion with credible evidence showing that, if uncontroverted, the moving party would be entitled to a directed verdict." *Rodell v. Objective Interface Sys., Inc.*, No. 14-CV-01667-MSK-MJW, 2015 WL 5728770, at *3 (D. Colo. Sept. 30, 2015) (citing *Celotex Corp.*, 477 U.S. at 331).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury. *See Anderson*, 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). Evidence, including testimony, offered in support of or in opposition to a motion for summary judgment must be based on more than mere speculation, conjecture, or surmise. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable juror could return a verdict for either party. *Anderson*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288

(1968)).  In reviewing a motion for summary judgment, the Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the non-moving party."  See *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).

### III.   ANALYSIS

Plaintiff's Complaint brings a single excessive force claim pursuant to 42 U.S.C. § 1983.  [#1]  "[C]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  "The reasonableness of the use of force is evaluated under an 'objective' inquiry that pays 'careful attention to the facts and circumstances of each particular case.'" *Cnty. of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1546 (2017) (quoting *Graham*, 490 U.S. at 396).  In particular, *Graham* identified the following factors the Court should consider:  "[(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  "The operative question in excessive force cases is whether the totality of the circumstances justifie[s] a particular sort of search or seizure." *Mendez*, 137 S. Ct. at 1546 (quotation omitted) (alteration in original).

In the Motion, Deputy Jenkins argues that he is entitled to qualified immunity on Plaintiff's excessive force claim.  [#32]  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation

omitted).  Once a defense of qualified immunity is asserted, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was "clearly established" at the time of the challenged conduct.'"  *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (emphasis in original)).  "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."  *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

Courts have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.  And, in certain cases, "a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all."  *Id.* at 239.  Because the Court finds these principles applicable here, the Court first addresses the second prong of the qualified immunity analysis—*i.e.*, whether Plaintiff has identified a clearly established right allegedly violated by Deputy Jenkins.

The requirement that the right be clearly established presents a "demanding standard" intended to ensure the protection of "all but the plainly incompetent or those who knowingly violate the law."  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  In determining whether the constitutional right was clearly established at the time of the misconduct, the Tenth Circuit has explained:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.  Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, existing precedent must have

7

> placed the statutory or constitutional question beyond debate. The dispositive question is whether the violative nature of the *particular conduct* is clearly established. In the Fourth Amendment context, the result depends very much on the facts of each case, and the precedents must squarely govern the present case.

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotations and citations omitted) (emphasis in original). The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." *Wesby*, 138 S. Ct. at 591 n.8. The Tenth Circuit, however, has stated that "[o]rdinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)) (alteration in original).

The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590 (quotation omitted). "[T]he 'specificity' of the rule is especially important in the Fourth Amendment context." *Id.* (quotation omitted).

Here, Plaintiff has failed to sustain his burden to identify a clearly established right regarding his excessive force claim and therefore fails to overcome the second prong of Deputy Jenkins' qualified immunity defense. *Quinn*, 780 F.3d at 1004 ("[T]he onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, *and* (2) that the right was 'clearly established' at the time of the challenged conduct." (quotation omitted)). Plaintiff has not cited a single case that would clearly establish that

Deputy Jenkins violated Plaintiff's constitutional rights.[4]  This failure alone would typically require a finding that Deputy Jenkins is entitled to qualified immunity.  *Patel*, 849 F.3d at 980 ("Ordinarily th[e] [clearly established] standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." (quotation omitted)).

Instead, Plaintiff appears to rely solely on the *Graham* factors to support his contention that Deputy Jenkins violated a clearly established right.  [#35 at 4-5]  But Plaintiff provides scant analysis of the *Graham* factors as applied to the facts of this case.  [*Id*. at 3 (stating that the severity of the crime weighs in favor of Plaintiff and stating, in conclusory fashion, that "[t]he final two factors . . . also weigh in [Plaintiff's favor]").  And, as Plaintiff himself acknowledges, "an officer's violation of the *Graham* reasonableness test is a violation of clearly established law only if there are 'no substantial grounds for a reasonable officer to conclude that there was legitimate justification' for acting as they did."  [#35 at 5 (quoting *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1286 (10th Cir. 2007))].

---

[4] Despite bearing the burden on this issue, Plaintiff provides scant analysis in support of his argument that Deputy Jenkins violated a clearly established right.  Indeed, after citing cases for the general standards concerning the application of the clearly established prong to excessive force cases, Plaintiff's entire argument is as follows:

> In this case, [Plaintiff] has established that there was not a legitimate justification for acting as [Deputy] Jenkins did.  Without provocation, [Deputy] Jenkins pulled [Plaintiff] out of his truck and attacked him.  He broke his ribs.  What Deputy Jenkins did was criminal.  There is not a polite way to say this.

[#35 at 4-5]  Plaintiff thereafter fails to cite a single case describing "particular conduct" similar to the facts of this matter and establishing a violation of clearly established law.  [*Id*.]  *Aldaba*, 844 F.3d at 877.

In any event, the Court cannot conclude, based upon the *Graham* factors alone, that there were "no substantial grounds" for Deputy Jenkins to remove Plaintiff from the vehicle in the manner that he did. Although Plaintiff was not stopped for a violent crime, the other two *Graham* factors arguably support Deputy Jenkins' actions: Plaintiff was refusing Deputy Jenkins' commands and a reasonable officer could conclude that Plaintiff—potentially under the influence and in close proximity to a firearm—posed an immediate threat. *Graham*, 490 U.S. at 396. Given that the *Graham* factors do not clearly establish a violation of Plaintiff's constitutional rights, and Plaintiff has failed to identify any other authority in support of his contention that Deputy Jenkins violated a clearly established right, the Court concludes that Plaintiff has not identified a genuine issue of material fact as to the clearly established prong of the qualified immunity analysis. Accordingly, the Court finds that Plaintiff has not satisfied his burden of overcoming that defense and therefore GRANTS the Motion.[5]

---

[5] In the Motion, Deputy Jenkins also argues that to the extent Plaintiff's Complaint can be construed to contain a Section 1983 claim against Deputy Jenkins in his official capacity, summary judgment should also be granted as to that claim. [#32 at 9-12; *see also* #1 (suing Deputy Jenkins in his individual and official capacities)] Specifically, Deputy Jenkins argues that Plaintiff has not identified an official policy or custom that directly caused Plaintiff's alleged injury. [*Id*. at 10] Plaintiff does not respond to this argument [*See generally* #35] and has therefore abandoned any such claim. *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768-69 (10th Cir. 2001) (affirming district court's decision to grant summary judgment for defendants on a claim that the plaintiff abandoned when he failed to address it in his response to defendants' motion for summary judgment); *Hutton v. Woodall*, 70 F. Supp. 3d 1235, 1239 (D. Colo. 2014) (finding claims abandoned when the plaintiff failed to address the defendant's summary judgment arguments). And, in any event, Plaintiff has failed to identify a municipal policy or custom that directly caused Plaintiff's injury, and has therefore failed to satisfy his burden on any official capacity claim. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) ("Suing individual defendants in their official capacities under § 1983 . . . is essentially another way of pleading an action against the county or municipality they represent."); *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) ("[T]o prove a § 1983 claim against a municipality, a plaintiff must show the existence of a municipal policy or custom which directly caused

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [#32] is **GRANTED**. The Clerk of Court shall enter Judgment in favor of Defendant and close this case.

DATED: April 13, 2022          BY THE COURT:

                               s/Scott T. Varholak
                               United States Magistrate Judge

---

the alleged injury."). Accordingly, to the degree that Plaintiff sought to bring a claim against Deputy Jenkins in his official capacity, the Motion is GRANTED.